T.C. Summary Opinion 2006-167

UNITED STATES TAX COURT

DANIEL M. GRAY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23314-04S.                    Filed October 18, 2006.

Daniel M. Gray, pro se.

<u>Michael E. Melone</u>, for respondent.

DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463.  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined a deficiency of $3,178 in petitioner's Federal income tax for 2000. The issues for decision are whether petitioner is entitled to: (1) A home mortgage interest deduction, and (2) employee business expense deductions in excess of those allowed by respondent.

## Background

The stipulation of facts and the exhibits received into evidence are incorporated herein by reference. At the time the petition in this case was filed, petitioner resided in Sacramento, California.

During 2000, petitioner was employed as a phone line installer by several companies. Petitioner traveled nationwide for his jobs and was employed at the following locations in 2000.

| Employer | Location | Dates in 2000 | Total Days |
|----------|----------|---------------|------------|
| ADEX | Denver, CO | 1/1-1/8 | 8 |
| Tesinc | Los Gatos, CA | 1/17-5/20 | 125 |
| Butler | Saratoga, CA | 5/27-6/8 | 13 |
| TEKSYSTEMS | Sacramento, CA | 7/1-7/10 | 8 |
| US Utilities | Washington, DC | 8/8-8/30 | 23 |
| RJE Telecom | Denver, CO | 9/5-9/28 | 19 |
| ADEX | Seattle, WA | 10/21-12/31 | 72 |

Total days worked 268
Total days not worked 97

Petitioner filed for 2000 a Form 1040, U.S. Individual Income Tax Return. On Schedule A, Itemized Deductions, petitioner deducted a home mortgage interest expense of $6,600 for a condominium located at 5912 #2 Walerga, Sacramento,

California (condo), which was disallowed by respondent in the statutory notice of deficiency.

Petitioner also reported, on Schedule A, employee business expenses and other miscellaneous itemized deductions of $33,881. Petitioner claims that he is entitled to deduct $32,938 of that amount, after taking into account the 2-percent floor of section 67. In the statutory notice of deficiency, respondent allowed $12,014.43 of the reported deductions. Respondent determined that the balance of $21,866.57 represented travel, meals, and lodging that petitioner incurred while away from home. Respondent disallowed this amount on the grounds that petitioner did not have a tax home in 2000.

## Discussion

The Commissioner's determinations are presumed correct, and generally taxpayers bear the burden of proving otherwise.[1] Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Tax deductions are a matter of legislative grace with the taxpayer bearing the burden of proving entitlement to the deductions claimed. Rule 142(a)(1); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

---

[1]Petitioner has not raised the issue of sec. 7491(a), which shifts the burden of proof to the Commissioner in certain situations. This Court concludes that sec. 7491 does not apply because petitioner has not produced any evidence that establishes the preconditions for its application.

Mortgage Interest Deduction

Section 163 allows a deduction for interest paid or accrued on certain indebtedness, including acquisition indebtedness on a qualified residence.  See sec. 163(h)(2)(D), (3)(A).  The acquisition indebtedness generally must be an obligation of the taxpayer and not an obligation of another.  See Golder v. Commissioner, 604 F.2d 34, 36 (9th Cir. 1979), affg. T.C. Memo. 1976-150; Smith v. Commissioner, 84 T.C. 889, 897 (1985), affd. without published opinion 805 F.2d 1073 (D.C. Cir. 1986).

The applicable regulation, however, in pertinent part provides:

> Interest paid by the taxpayer on a mortgage upon real estate of which he is the legal or equitable owner, even though the taxpayer is not directly liable upon the bond or note secured by such mortgage, may be deducted as interest on his indebtedness.  * * *

Sec. 1.163-1(b), Income Tax Regs.

Our Memorandum Opinion in Golder, as affirmed by the Court of Appeals for the Ninth Circuit, construed section 1.163-1(b), Income Tax Regs., to permit interest deductions in situations where the taxpayer is not personally liable on a mortgage of the property which is used as security for a loan made to the taxpayer.  Although the taxpayer is not personally liable on the debt, the taxpayer must pay the mortgage to avoid foreclosure. Id.  According to Golder, section 1.163-1(b), Income Tax Regs., recognizes the economic substance of nonrecourse borrowing and

allows an interest deduction to a taxpayer, who, in the situations contemplated in the regulations, is not directly liable on the mortgage indebtedness.  Id.

This Court, relying on the same rationale underlying the interpretation in Golder of section 1.163-1(b), Income Tax Regs., has held that taxpayers who do not hold legal title to property, but who establish that they are equitable owners of the property, are entitled to deduct mortgage interest paid by them with respect to the property.  Daya v. Commissioner, T.C. Memo. 2000-360; Trans v. Commissioner, T.C. Memo. 1999-233; Usla v. Commissioner, T.C. Memo. 1997-551.

Petitioner contends that he is entitled to deduct home mortgage interest because:  (1) He was the owner of the condo in 2000, and (2) he paid the interest during that year.  Respondent disagrees, contending that petitioner has not established that: (a) He had any legal or equitable interest in the condo during 2000, (b) he was legally liable for the indebtedness on the condo, and (c) the claimed deduction of $6,600 (i) was an interest expense and (ii) was paid.

Petitioner testified that, around November or December of 1999, he purchased the condo from his mother, Elsie Gray Tiernan (Mrs. Tiernan), for $30,000.  Petitioner claims that the acquisition of the condo was financed entirely by Mrs. Tiernan. In support, petitioner provided a copy of a one-page typewritten

document entitled "Promissory Note" dated "December 1999" (note) purporting to be between petitioner and Mrs. Tiernan, which, in its entirety, provides:

> $30,000.00 face value, payable at $2,000.00 per month, secured by the Condo at 5912 #2 Walerga, Sacramento, California.  This agreement for the purchase of mentioned Condo is between Elsie Gray Tiernan (Seller) and Daniel M. Gray (Buyer) as his sole and separate property.

Despite the "sale", petitioner testified that he did not hold legal title to the condo in 2000, claiming that the title was not conveyed and filed under his name until 2001.  The "note", however, was not signed by Mrs. Tiernan, suggesting that petitioner and Mrs. Tiernan never reached an agreement on the sale.  It is not disputed that legal title remained under Mrs. Tiernan's name during 2000.  Petitioner must therefore show that he had an equitable interest in the condo to prevail.

In addition to the "note", petitioner presented and the Court admitted the following documents as evidence:  (1) Bank statements dated 2000 and 2001 from a joint checking account that petitioner maintained in Nevada with his stepfather, William Tiernan (Mr. Tiernan); (2) a check register for 2000 with entries that corresponded to the check numbers on some of the bank statements; (3) letters dated as in 2002 between petitioner and the Tiernans relating to petitioner's rental and eviction from the condo; (4) a signed purchase agreement dated December 14,

2000, for the sale of the condo by Mrs. Tiernan to a third party; (5) a Tenant Reimbursement Request for Alterations to Rental Unit dated March 24, 2003, from petitioner to the Tiernans; (6) utility bills dated 2000 for the condo; and (7) other miscellaneous documents.

The Court has reviewed the evidence presented by petitioner and has found little support for petitioner's contention that he was the owner of the condo, legal or equitable, during 2000. The purchase agreement dated December 14, 2000, indicates that Mrs. Tiernan had discussions with a third party regarding the sale of the condo. This, together with Mrs. Tiernan's failure to sign the "note", tends to suggest that Mrs. Tiernan did not convey any type of interest in the condo to petitioner in 1999.

Petitioner asserts that the bank statements, together with the check register, show the actual amount that he paid to Mrs. Tiernan in connection with the condo in 2000. Petitioner and Mr. Tiernan maintained a joint checking account in Nevada where the source of the funds in the account was deposits from petitioner's payroll. Petitioner testified that he gave Mr. Tiernan access to the account because he needed someone to pay his bills, including payments on the condo, whenever he was out of town on a job.

The check register shows only one entry that relates directly to a payment on the condo. The entry reads: "Dep. to 7942 acct 5/27/00 4,000.00 from Dan Gray, Less $2,000.00 for Condo, approx Bal. 3591.00." A comparison of the check register to the bank statement shows that Mrs. Tiernan was the payee of check No. 2057, dated May 30, 2000, for $2,000 (check No. 2057). Petitioner urges the Court to infer from the entry that petitioner has been making payments on the principal and the interest under the "note".

It is unclear which portion of check No. 2057, if any, would constitute interest because interest was unstated under the "note". At trial, petitioner failed to explain how he had determined the interest component for each payment, or how he had calculated that he paid a home mortgage interest expense of $6,600 for 2000. Petitioner relies solely on his uncorroborated testimony that the interest due and paid under the "note" for 2000 was $6,600.

Even if petitioner had paid any interest under the "note", it is not deductible because the Court is not persuaded that petitioner was the equitable owner of the condo in 2000. Other than check No. 2057, the check register shows no other payments to Mrs. Tiernan or payments related to the condo. Petitioner did

not offer any other evidence to show that he made payments on the mortgage for the condo.

Petitioner's evidence, as a whole, indicates that he was more like a lessee than an equitable owner of the condo during 2000. Petitioner has not shown that he assumed the benefits and burdens of ownership. See Baird v. Commissioner, 68 T.C. 115, 124 (1977) (a taxpayer becomes the equitable owner of property when he assumes the benefits and burdens of ownership).

The bank statements show that petitioner made numerous purchases from Home Depot and Homebase to improve the condo. After the improvements were completed, petitioner submitted a Tenant Reimbursement Request for Alterations to Rental Unit to the Tiernans to seek reimbursement for the materials and labor spent on the project.

Furthermore, the letters dated 2002, between petitioner and Mr. Tiernan, show that petitioner was facing eviction from the condo because he was behind on his "monthly payments". In one of the letters, petitioner characterized a payment that he was making to the Tiernans as "Lease/Rental of 5912 Walerga St. #2".

Based on the foregoing, the Court finds that petitioner has not treated the condo as if he were the owner and has not established equitable ownership of the condo during 2000. Respondent's determination disallowing petitioner's home mortgage interest deduction is therefore sustained.

Employee Business Expense Deductions

Section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred in carrying on a trade or business. Section 162(a)(2) allows a taxpayer to deduct traveling expenses, including amounts expended for meals and lodging, if such expenses are: (1) Ordinary and necessary, (2) incurred while away from home, and (3) incurred in the pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465, 470 (1946). Services performed by an employee constitute a trade or business for this purpose. O'Malley v. Commissioner, 91 T.C. 352, 363-364 (1988).

For purposes of section 162, generally "home" (or tax home) means the vicinity of the taxpayer's principal place of business or employment. Mitchell v. Commissioner, 74 T.C. 578, 581 (1980); Daly v. Commissioner, 72 T.C. 190, 195 (1979), affd. 662 F.2d 253 (4th Cir. 1981). A taxpayer's residence, when different from the vicinity of his principal place of employment, may be treated as his tax home if the taxpayer's employment is "temporary" rather than "indefinite". Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958).

A taxpayer must have a tax home from which to be away from to be entitled to a deduction under section 162(a)(2). Henderson v. Commissioner, T.C. Memo. 1995-559, affd. 143 F.3d 497 (9th Cir. 1998). A taxpayer without a tax home is deemed to have

"carried his home on his back", to have been an itinerant, and is not entitled to the deduction because he was not "away from home".  Wirth v. Commissioner, 61 T.C. 855, 859 (1974); Hicks v. Commissioner, 47 T.C. 71, 74 (1966).  The purpose of the "away from home" provision is to mitigate the burden of the taxpayer who, because of exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses.  Kroll v. Commissioner, 49 T.C. 557, 561-562 (1968); Hicks v. Commissioner, supra.  A taxpayer has a "home" when he has incurred substantial continuing living expenses at a permanent place of residence.  James v. United States, 308 F.2d 204, 208 (9th Cir. 1962); Wirth v. Commissioner, supra.

Respondent argues that petitioner may not deduct the cost of travel, meals, and lodging that petitioner paid during 2000, because petitioner had no tax home.

Petitioner argues that in 2000, his tax home was in Sacramento, California.  Petitioner asserts that he owns the condo, paid the utilities, returned to the condo between jobs, and used the condo's address to report his Federal taxes.  In support, petitioner presented utility bills and bank statements. Petitioner contends that the bank statements show that he was in Sacramento during his periods of unemployment in 2000, since the

statements post the locations where he withdrew money or purchased items.

On the basis of the record, the Court finds that petitioner did not have a tax home in 2000. Petitioner traveled nationwide and had no principal place of employment. While petitioner may have believed that Sacramento was his home and made an effort to return whenever possible, that belief is not sufficient to establish Sacramento as his tax home.

Petitioner did not have a legal or equitable interest in the condo. The letters dated 2002 show that petitioner was obligated to pay rent to the Tiernans. But, it is unclear what petitioner's monthly rent was in 2000 or how much rent was actually paid during that year. The check register shows that petitioner paid to Mrs. Tiernan $2,000 by check No. 2057 dated May 30, 2000, "for Condo". There are no other entries in the check register that relate directly to a payment on the condo. The record shows that petitioner traveled 268 days out of the year or 73.42 percent. Petitioner's financial contribution of $2,000 for the condo is minimal when compared to the $21,866.57 of living expenses that he incurred while traveling. See Henderson v. Commissioner, supra.

Petitioner asserts that he returned to his condo after each job because that was his "base" and that he, for the most part, spent time in Sacramento between jobs. The bank statements,

petitioner's sole evidence that he returned to the condo, are either irrelevant or of little probative value.  Some of the bank statements were dated 2001 or had dates that were illegible.  To the extent that the statements were dated 2000, they fail to cover the periods for which petitioner was unemployed during that year.

Petitioner did not present a complete set of utility bills for 2000.  The utility bills that were presented were in either Mr. or Mrs. Tiernan's name.  Nevertheless, the utility bills, together with the check register, show that petitioner paid for the gas, electric, and water for the condo in 2000.

Even if petitioner made a $2,000 financial contribution and paid the utilities for the condo in 2000, the Court finds that petitioner did not have such substantial continuing and duplicative living expenses in Sacramento to justify the allowance of a deduction for travel, meals, and lodging expenses incurred while traveling.  Respondent's determination with respect to petitioner's employee expense deduction is sustained.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

Decision will be entered

for respondent.