T.C. Summary Opinion 2008-151


UNITED STATES TAX COURT


LARRY W. KOEPKE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21111-05S.          Filed December 4, 2008.


Larry W. Koepke, pro se.

Lisa M. Oshiro, for respondent.


GERBER, Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and

_____

    [1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 2003, the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

this opinion shall not be treated as precedent for any other case. Respondent determined a $7,816 deficiency in petitioner's 2003 Federal income tax. The deficiency arises from respondent's disallowance of several deductions petitioner claimed on his 2003 income tax return. Respondent, in his answer to petitioner's amended petition, asserted a $1,563.20 accuracy-related penalty under section 6662(a).

Respondent has conceded petitioner's entitlement to the following deductions: State and local income tax--$5,414; real estate tax--$2,986; home mortgage interest--$11,308; other expenses--$185, subject to the 2 percent of adjusted gross income (AGI) limitation; and union and professional dues--$738, subject to the 2 percent of AGI limitation; and respondent has also conceded that the section 6662(a) accuracy-related penalty does not apply.

The following deductions remain in controversy: Gifts to charity--$855; equipment--$224; unreimbursed employee expenses--$14,308.

## Background

Petitioner resided in Wisconsin at the time his petition was filed. He worked for Northwest Airlines (Northwest) as an aircraft mechanic for over 20 years. Petitioner's residence was close to Northwest's Minneapolis, Minnesota, home base. During 2001 petitioner was Northwest's lead mechanic in Alaska, but he

returned to Minneapolis during 2002. During 2003 Northwest instituted a reduction-in-force, and on March 26, 2003, petitioner was displaced under a seniority system from his Minneapolis position to a position in Newark, New Jersey. This seniority system was defined in the employment contract with Northwest.

Under the contract, if employees were laid off, they could use their seniority to gain placement in a city where they were most senior. In effect, the use of the seniority system in a layoff situation had a "domino effect" caused by the most senior person who had been laid off selecting another city where he was most senior and thereby displacing another employee and so on. If there had been someone less senior in Minneapolis when petitioner was laid off, he would have had the option to remain in Minneapolis. Because there was no less senior person in Newark, petitioner moved to Newark where his seniority permitted him to work.

Under the circumstances, there was no way to determine the length of time that petitioner would remain in Newark or any other city. On April 2, 2003, petitioner was served with another reduction-in-force notice, but it was rescinded shortly thereafter. On May 23, 2003, however, another reduction-in-force was issued. A person from Minneapolis who was more senior than petitioner exercised his seniority to bump petitioner in Newark

and, in turn, petitioner exercised his seniority to bump someone less senior, thereby moving to Philadelphia, Pennsylvania. Petitioner finished out 2003 in Philadelphia, but there were occasions where he was close to being bumped again. During the period under consideration, Northwest laid off 2,700 people, including 110 lead mechanics, and those layoffs generated petitioner's movement from city to city.

Petitioner remained in Philadelphia until February or March 2005 when another round of layoffs occurred. Subsequently, he was forced to go to Houston, Texas, where he worked for 2-1/2 months, and then he moved to Seattle, Washington, where he remained until the end of 2005. Throughout the layoffs and "seniority moves" from city to city, petitioner has always maintained his house in the Minneapolis area and considered that his permanent residence. When petitioner was not working in Minneapolis, he claimed deductions for travel from Minneapolis to his duty station and transportation from what he considered his temporary residence to the airport where he worked.

For 2003 petitioner deducted $10,572 of "Unreimbursed Employee Business Expenses" as follows: Standard automobile mileage-$3,252; travel expense while away from home--$4,840; meals and entertainment--$2,480. Respondent disallowed the entire amount for failure to substantiate and/or otherwise meet the requirements of section 274(d). Petitioner prepared logs

detailing the $10,572 of expenditures at the end of the year 2003.

## Discussion

In general, the Commissioner's determinations in a notice of deficiency are presumed correct. Welch v. Helvering, 290 U.S. 111, 115 (1933). In pertinent part, Rule 142(a)(1) provides the general rule that "The burden of proof shall be upon the petitioner". In certain circumstances, however, if the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the proper tax liability, section 7491 places the burden of proof on the Commissioner. Sec. 7491(a)(1); Rule 142(a)(2). Section 7491(a)(1) applies only if the taxpayer complies with substantiation requirements, maintains all required records, and cooperates with the Commissioner's requests for witnesses, information, documents, meetings, and interviews. Sec. 7491(a)(2). The record shows that petitioner did not comply with the substantiation requirements. In addition, no question was raised by the parties as to the burden or proof or going forward with evidence.

This Court has considered the deductibility of travel, meals, and lodging expenses of similarly situated Northwest employees who were likewise bumped or displaced by layoffs and downsizing. See, e.g., Wasik v. Commissioner, T.C. Memo. 2007-148. The question that is decided in each of these cases is

whether the taxpayer was temporarily away from home within the meaning of section 162.

A taxpayer may deduct such expenses while away from home in the pursuit of a trade or business.  Secs. 162(a)(2), 262(a); Commissioner v. Flowers, 326 U.S. 465 (1946).  The word "home" for purposes of section 162(a)(2) generally refers to the area of a taxpayer's principal place of employment, not the taxpayer's personal residence.  Daly v. Commissioner, 72 T.C. 190, 195 (1979), affd. 662 F.2d 253 (4th Cir. 1981).  There is an exception to the general rule that a taxpayer's tax home is his or her principal place of employment if the taxpayer's employment away from home is temporary.  Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958);  Mitchell v. Commissioner, T.C. Memo. 1999-283.

Petitioner argues that his employment in cities other than Minneapolis was temporary under the union contract with Northwest because he ultimately had a guaranteed position in Minneapolis once his seniority situation was such that he could return.  In other words, he had a right to bump less senior Northwest employees in Minneapolis, and Northwest could not defeat that right by a new hire or transfer of an existing employee with less seniority.  That aspect of the union contract, petitioner contends, makes Minneapolis his tax home, and his positions in other cities are temporary.

We consider all of the facts and circumstances when considering the situs of and/or whether a taxpayer has a tax home. See Rev. Rul. 73-529, 1973-2 C.B. 37. A taxpayer must generally have some business justification to maintain a residence, beyond purely personal reasons, so as to be entitled to deduct expenses incurred while temporarily away from that home. Hantzis v. Commissioner, 638 F.2d 248, 255 (1st Cir. 1981), revg. T.C. Memo. 1979-299; Bochner v. Commissioner, 67 T.C. 824, 828 (1977). If a taxpayer has no business connection with the primary residence, it has been held that there is no compelling reason to maintain that residence and incur substantial, continuous, and duplicative expenses elsewhere. See Henderson v. Commissioner, 143 F.3d 497, 499 (9th Cir. 1998), affg. T.C. Memo. 1995-559; Hantzis v. Commissioner, supra. In that situation, the expenses incurred while temporarily away from that residence are not deductible. Hantzis v. Commissioner, supra; Bochner v. Commissioner, supra.

Petitioner's work situation before and during 2003 was such that he was subject to being laid off because of Northwest's downsizing. Although he was in no city for an extended period, under the employment contract his choices were either to be laid off and not work or to exercise his seniority and bump an employee in a different city. Petitioner's work situation was indeterminate, as he did not know when and if Northwest would

continue to downsize and/or the length of time that he would remain in any particular city where he had bumped a less senior person.  We recognize that petitioner maintained a home in the Minneapolis area and he intended to use the terms of the union contract to return to Minneapolis if his seniority was such that he could.  We are also sympathetic to petitioner's situation, as we recognize that he was forced to involuntarily move from city to city in order to continue earning a living.

These circumstances, however, do not make Minneapolis petitioner's tax home at the time that he chose to move from there in order to continue working for Northwest, albeit in another city.  When he moved from Minneapolis, his business ties to that location ended.  The reality of petitioner's situation was that he did not know how long he would be in any of the cities in which he worked or where he would go next.  With those circumstances petitioner's time in any city could not be termed "temporary", and there was no way to predict or know when he could  return to Minneapolis under the seniority system.

Although petitioner's situation is a hardship upon him, there is no statutory provision that provides relief for his situation.  Under established principles of tax law, petitioner was not "away from home" during 2003, and we must hold that he is not entitled to deduct the $10,572 in travel and meal expenses.

With respect to the remaining employee business items in dispute, respondent determined that petitioner failed to substantiate or to show the employee business purpose of the claimed expenditures. See secs. 162, 212. Taxpayers are required to maintain records sufficient to permit the verification of income and expenses. Sec. 6001. As a general rule, if the trial record provides sufficient evidence that the taxpayer has incurred a deductible expense, but the taxpayer is unable to adequately substantiate the precise amount of the deduction, the Court may estimate the amount of the deductible expense and allow a deduction to that extent. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). Such estimates are to be made bearing heavily against the taxpayer whose inexactitude in substantiating the amount of the expense is of his own making. Id. at 544. However, in order for the Court to estimate the amount of an expense, the Court must have some basis upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

During 2003 petitioner purchased a device for $224 that permitted his computer to receive wireless Internet service. During 2003 he lived in places where wireless Internet service was available, and he used that service to check Northwest's postings of changes of post of duty because of seniority. Petitioner also paid $312, during 2003, for an Internet service

provider.  Although petitioner has adequately substantiated these expenditures and it was ordinary and necessary for him to keep abreast of his work assignments, some portion of petitioner's use of the Internet was personal and not business related.  On the record before us, we find and hold that petitioner is entitled to deduct $100 for 2003, and respondent is sustained on the disallowance of the remaining $436 ($224 plus $312 equals $536, less $100 equals $436).

We find and hold that for 2003 petitioner is entitled to deduct the following amounts as employee business-related items: $70 to maintain his mechanic's license; $156 for prescription safety glasses; $154 for steel-toed, special-soled boots that remained at the work place because of acid and oil accumulation; $1,022 for tools needed to properly perform his job; $92 for transportation between job and union meetings; $68.36 for a winter parka with the Northwest logo because such clothing was necessary but not provided by Northwest; and $822 for cleaning uniforms provided by Northwest.

During 2003 petitioner attended church intermittently and would make contributions on each such occasion.  Petitioner recorded the date and amount of each contribution on a calendar which he used to assist in the preparation of his 2003 tax return.  He attended church on 24 occasions during 2003 and made contributions ranging from $10 to $50, for a total of $855 for

the year.  Based on the record, petitioner is entitled to deduct $855 for contributions for 2003.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.